**BRENNER v. BRENNER et al.**

No. 269.

United States District Court
E. D. Missouri, N. D.

Aug. 25, 1949.

Errol Joyce, Brookfield, Harry Carstar-phen, Hannibal, for plaintiff.

Arch B. Davis, Chillicothe, Charles E. Rendlen, Hannibal, for defendants.

HARPER, District Judge.

Plaintiff seeks recovery of possession of the real estate described in the petition and for the reasonable rental value thereof from the 15th day of April, 1944. The facts disclose that Edward Brenner died intestate on November 22, 1938, seized in fee of the real estate in question. Plaintiff was one of the heirs of Edward Brenner, owning an undivided one-eighth interest in the real estate.

On February 16, 1940, Fred B. Prewitt, one of the heirs of Edward Brenner, other than the plaintiff, filed a partition suit in the Circuit Court of Linn County, Missouri, seeking to partition the real estate in controversy. The real estate was subject to a deed of trust given by Edward Brenner in his lifetime to the Federal Land Bank of St. Louis, Missouri.

On May 31, 1941, plaintiff filed his petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, in the District Court of the United States for the Eastern Dis-

trict of Missouri, Northern Division, seeking composition and extension of time to pay debts, which petition was approved by the District Court on June 4, 1941.

On June 23, 1941, an interlocutory decree was entered by the Circuit Court of Linn County in the partition suit directing the sheriff to sell the property. On June 26, 1941, Prewitt, the plaintiff in the partition suit, filed a motion with the District Court requesting the court to approve and to allow the order of partition and sale by the Circuit Court of Linn County, which motion was denied by the District Court on August 9, 1941.

On September 30, 1941, the plaintiff filed under Section 75, sub-section (s) of the Bankruptcy Act, his amended petition, stating further that he had been unable to obtain the acceptance of the majority of his creditors affected by said composition, and praying to be adjudged by the court a bankrupt within the purview of said Act.

On October 3, 1941, the District Court adjudicated plaintiff a bankrupt on his petition under sub-section (s) of Section 75 of the Bankruptcy Act and referred the matter to the Conciliation Commissioner, Charles K. Hart.

On June 1, 1942, the order of sale under the partition suit previously entered by the Circuit Court of Linn County, Missouri, on June 23, 1941, was renewed. On July 8, 1942, the real estate was sold by the sheriff of Linn County, Missouri, pursuant to the order of sale in the partition suit, and the report of sale was duly filed with the Circuit Court. The defendant, Marcedes Brenner, was the purchaser of this property at this sale. The defendant, Henry Brenner, as an heir of Edward Brenner, was the owner of an undivided one-eighth interest in the property. Henry Brenner is the husband of Marcedes Brenner, purchaser of the property at said sale.

On January 8, 1944, an order was made by the Conciliation Commissioner, setting aside exemptions under Sections 608 and 1324, Revised Statutes of Missouri for the year 1939, Mo.R.S.A., and the order further stayed all judicial or official proceedings for three years.

The plaintiff actively participated in the partition suit to the extent of appealing after the final order was made by the court and contested the ejectment suit brought by the defendant Marcedes Brenner, after the real estate was purchased by said defendant. As a result of said ejectment suit the plaintiff was evicted from the real estate in April, 1944.

■ Section 75 of the Bankruptcy Act was passed by Congress to give relief to debtors who were farmers. To take advantage of this section of the Bankruptcy Act the petitioner must be a farmer. There is no question but what the plaintiff in this case meets that requirement of the Act. The plaintiff owned only a one-eighth interest in the real estate in question, but the Act itself, in Section 75, sub. (s) (4) states that "the provisions of this title shall be held to apply also to partnerships, common, entirety, joint, community ownerships * * *."

This matter has been passed upon by the Supreme Court in the case of Mangus v. Miller, 317 U.S. 178, 63 S.Ct. 182, 87 L.Ed. 169. The court said, 317 U.S. loc. cit. 184, 63 S.Ct. loc. cit. 185: "* * * one joint tenant is authorized to file his petition under § 75 and subject his interest to the jurisdiction of the bankruptcy court just as he may under § 70 of the general Bankruptcy Act [11 U.S.C.A. § 110]."

■ The fact that the plaintiff contested this matter in the State courts has been held by the Supreme Court to be of no consequence. Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370. The court said in that case, 308 U.S. loc. cit. 439, 60 S.Ct. loc. cit. 346: "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land. The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law. If Congress has vested in the bankruptcy courts exclusive jurisdiction over farmer-debtors and their property, and has by its Act with-

drawn from all other courts all power under any circumstances to maintain and enforce foreclosure proceedings against them, its Act is the supreme law of the land which all courts—State and Federal—must observe." In the Kalb case, the Wisconsin courts had permitted a foreclosure of land during pendency of a bankruptcy petition filed by a farmer-debtor, but the Supreme Court held under the facts in that case that the foreclosure was void.

There is some question in this case as to whether or not because of the minority interest of the plaintiff it was necessary that the other parties interested in the land be joined in the action. Buss v. Prudential Insurance Company, 126 F.2d 960, 961, an 8th Circuit Court of Appeals case, deals with this question at length. But in the case at bar there is no reason to concern ourselves with this problem because of the facts in the case.

■ The sole question for determination is whether or not the sale held by the sheriff of Linn County, Missouri, on July 8, 1942, wherein the defendant, Marcedes Brenner, purchased the property, was a valid sale. Its validity depends on whether or not the state courts had the authority at that time to sell the property. At the time the Circuit Court renewed the order of sale on June 1, 1942, and at the time of the sale on July 8, 1942, there was not a stay order issued by the Conciliation Commissioner or by the District Court, as the stay order was not issued until January 8, 1944, almost two years after the sale. The courts have held that there are two kinds of stays, namely, judicial and automatic. The Supreme Court in passing on this matter in Kalb v. Feuerstein, supra, passed on the question of whether or not upon the filing of a petition under Section 75 of the Bankruptcy Act there was an automatic stay which did not require any action on the part of the court. The court in the Kalb case was dealing with a case in which the farmer-debtor had filed under Section 75 and subsections (a) to (p) of the Act, and the court held that during the time prior to the farmer-debtor being adjudicated bankrupt that the stay was automatic and no action was required by the court. In the case at bar it

is evident from the Kalb case that no stay was required prior to October 3, 1941, at which time this court adjudicated the plaintiff bankrupt under Section 75, sub-section (s) of the Bankruptcy Act.

■ The courts have held, however, that once the farmer-debtor is adjudged bankrupt that at that time it is necessary that certain things be done. They are outlined in detail in the Act itself. Certain conditions must be met and the Act provides in Section 75, sub. (s), paragraph (2), "when the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court * * *." Under the section the conditions referred to before a stay order is made by the court deal with such things as appraisal of the property, setting off the debtor's exemptions, the rights of the parties to file objections and exceptions, take appeals thereform, and other matters pertaining thereto. In the case at bar the stay order was not issued until January 8, 1944, and in the meantime the property had been sold on July 8, 1942. The appellate courts have held that after the farmer-debtor is adjudicated bankrupt, if it is necessary to prevent sales, that a stay order be secured from the courts. Hardt v. Kirkpatrick, 9 Cir., 91 F.2d 875, 878; Paradise Land & Livestock Company v. Federal Land Bank, 10 Cir., 118 F.2d 215, 217; and Skinner v. Dingwell, 8 Cir., 134 F.2d 391. In the Hardt case, the court said, referring to paragraph 1, subsecion (s) of Section 75 of the Bankruptcy Act, 91 F.2d loc. cit. 878: "Since there is nothing in section 75, sub. s, to prevent the appellant from exercising the power of sale under the deed of trust, in the absence of a court order staying such sale, we must turn to the general bankruptcy law to ascertain whether we can find any such prohibition there." The court further held that the stay provided for in Section 75, sub. s, is a judicial stay and not an automatic one, and that under the general bankruptcy law there is no automatic stay to prevent the sale of property, a judicial stay being required.

■ In the case at bar no judicial stay was secured prior to the Circuit Court of Linn County renewing the order of sale on

June 1, 1942, and the sale on July 8, 1942. In the absence of a judicial stay order being issued by the court, the Circuit Court of Linn County had the right to order the sale of the property, and the sheriff of Linn County to sell the property pursuant to said order, and to convey, insofar as this Court is concerned, a valid title.

Accordingly, the prayer of the complaint will be denied. Attorneys for the defendant will submit findings of fact, conclusions of law and judgment for approval, signature and entry.