In re **BROOKHAVEN TEXTILES, INC.**, Debtor.

**BROOKHAVEN TEXTILES, INC.**, Plaintiff,

v.

**AVONDALE MILLS, INC.**, Defendant.

**Bankruptcy No. 80 B 10927.
Adv. No. 80–5285–A.**

United States Bankruptcy Court, S. D. New York.

June 23, 1982.

As Corrected July 20, 1982.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff.

1. 11 U.S.C. §§ 301; 1101, et seq.

Otterbourg, Steindler, Houston & Rosen, New York City, for defendant.

### DECISION ON MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

EDWARD J. RYAN, Bankruptcy Judge.

On June 18, 1980, Brookhaven Textiles, Inc. ("Brookhaven") filed a petition for reorganization pursuant to Sections 301 and 1101, et seq. of the Bankruptcy Code.[1] Pursuant to Section 1101 of the Code, Brookhaven was authorized to continue in possession of its property and is managing and operating its business as a debtor in possession.

On or about October 8, 1979, Brookhaven entered into a contract of sale with Avondale Mills, Inc. ("Avondale") for the purchase by Brookhaven from Avondale of approximately 100,000 yards of greige goods [2] at $1.0150 per yard. According to the terms of the contract, the unfinished goods were sold to plaintiff on a "bill and hold" basis, meaning that defendant retained the goods pending Brookhaven's shipping instructions.

On or about May 16, 1980, Brookhaven resold the goods to Schott International, Inc. ("Schott") at $.90 per yard. Pursuant to Schott's request, Brookhaven instructed Avondale to ship 45,655 yards of plaintiff's greige goods to Schott. Avondale released that amount of goods to Schott, and Schott has paid the $41,089.50 purchase price to Brookhaven. Plaintiff has not yet paid defendant the amount due for the latter's release of the goods to Schott.

Upon the filing of Brookhaven's Chapter 11 case, Avondale held and still holds the remaining 45,645 yards of goods which have not been paid for by Brookhaven.

On August 13, 1980, Brookhaven filed a complaint seeking to have this court direct Avondale to surrender and deliver possession of the 45,645 yards of greige goods to

2. Greige goods are raw or unfinished textile materials.

plaintiff, or in the alternative, award plaintiff actual damages in the amount of $41,080.50, the sum Brookhaven would have received from Schott had Avondale released the remaining quantity of goods.

In its answer, dated September 8, 1980, Avondale asked that the complaint be dismissed and that the automatic stay be vacated or otherwise amended so as to permit defendant to dispose of the goods in its possession in accordance with the terms of its contract [3] with plaintiff.

Thereafter, Avondale moved for summary judgment on the grounds that there are no material issues of fact in dispute and that the law does not support the granting of the relief sought by Brookhaven in its complaint. Avondale further requests that the automatic stay imposed upon defendant in accordance with Section 362 of the Bankruptcy Code be terminated, thereby allowing Avondale to dispose of the goods in its possession, or, in the alternative, staying further proceedings in this court and directing that the controversy between the parties be determined by arbitration in accordance with the contract between the parties.

Brookhaven filed a crossmotion for summary judgment requesting that: (a) both Avondale's answer and motion for summary judgment be dismissed, and (b) Avondale be directed to deliver the 45,645 yards of goods in its possession to Schott or, in the alternative, Brookhaven be awarded the sum of $41,080.50 in actual damages.

■ Both Brookhaven on its motion and Avondale on its cross-motion for summary judgment assert that there are no genuine issues of material fact in dispute. Although the parties themselves agree that only issues of law need be decided, this does not automatically preclude the court from finding that there are issues of material fact which need to be determined, which finding would prevent the granting of judgment to either party as a matter of law.[4] The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see if there is a genuine need for trial. On a motion for summary judgment, the court cannot try issues of fact; it can only determine whether there are issues to be tried.[5]

■ However, there are times when summary judgment is appropriate. A careful examination of all of the documents submitted by the parties herein indicates that while there are some remaining questions of fact relevant to the issues in this case, none rise to the level of materiality necessary to preclude the granting of summary judgment. Based on all of the evidence, this court holds that a valid contractual lien does exist in favor of Avondale, thereby warranting the granting of summary judgment in its favor as a matter of law.

■ However, before turning to a discussion of the merits, it is necessary to address Avondale's contention that the controversy ought to be determined by arbitration in accordance with the contract. Contrary to Avondale's assertions and based upon the nature of the dispute between the parties and the effect of such dispute's resolution, this court retains jurisdiction and determines that it need not submit the dispute to arbitration.

■ The bankruptcy court does not ordinarily surrender its jurisdiction except under exceptional circumstances. *Mangus v. Miller,* 317 U.S. 178, 186, 63 S.Ct. 182, 186, 87 L.Ed. 169 (1942), *reh. den.* 317 U.S. 712 (1943). Whether the bankruptcy court should surrender its jurisdiction to another

---

3. The contract between Avondale and Brookhaven provides, *inter alia,* (1) that any controversy arising out of the contract be settled by arbitration; (2) that any property of the buyer, including that which is billed and held by the seller, constitutes security for the purchaser's prior obligations and (3) that upon buyer's insolvency, seller may, *inter alia,* demand payment on all outstanding bills of buyer.

4. *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272 (2 Cir. 1967), remand 45 F.R.D. 38 (S.D.N.Y.1968), *later app.* 446 F.2d 1131 (2d Cir. 1971), *cert. den.* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

5. *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65 (2 Cir. 1971).

tribunal involves the exercise of judicial discretion. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940).

Arbitration is a method by which disputes are resolved when the issues involved require the particular knowledge and expertise of a tribunal which is more qualified than any other to hear the controversy. For example, labor disputes arising out of collective bargaining agreements are frequently reserved for arbitration. In those cases dealing with collective bargaining claims, where one of the parties is a petitioner in bankruptcy and labor peace is an issue, courts have held that the dispute may be so peculiar as to warrant the bankruptcy court's surrender of its jurisdiction to a more specialized tribunal. *In re Muskegon Motor Specialties Co.*, 313 F.2d 841, 843 (6th Cir.), *cert. den. International Union U. A., A. & A. I. W. v. Davis*, 375 U.S. 832, 84 S.Ct. 51, 11 L.Ed.2d 63 (1963). "In deciding whether a grievance or claim arising under a rejected collective bargaining agreement is appropriate for arbitration, the touchstone is whether arbitration will preserve labor peace . . . and at the same time avoid usurpation of the Bankruptcy Court's critical role in the reorganization proceeding." *Bohack Corp. v. Truck Drivers Local Union No. 807, et al.*, 431 F.Supp. 646, 653 (E.D.N.Y.), *aff'd* 567 F.2d 237 (2d Cir. 1977), *cert. den. Truck Drivers Local Union No. 807, et al. v. Bohack Corp.*, 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978). The matter to be decided herein concerns a contract dispute well within the ken of this court, not requiring the expertise of any special tribunal.

Equally important considerations in deciding whether to retain jurisdiction or surrender it to an arbitration tribunal concern the bankruptcy court's obligation to determine claims arising under a petition so as to effectively provide for the protection of the debtor and the preservation of the rights of the creditors. "There must be judicial control over the exercise of the right to arbitrate just as there is over other rights and duties of the bankrupt. For now, an additional consideration has been added, the rights of the creditors." *Truck Drivers Local Union No. 807, et al. v. Bohack Corp.*, 541 F.2d 312, 330 (2d Cir. 1976), *on remand Bohack Corp. v. Truck Drivers Local Union No. 807*, 431 F.Supp. 646 (E.D.N.Y.), *aff'd* 567 F.2d 237 (2d Cir. 1977), *cert. den. Truck Drivers Local Union No. 807, et al. v. Bohack Corp.*, 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978). "A decision of the arbitrator here would involve the interests of parties who never consented to arbitration, namely, the trustee in bankruptcy and the general creditors." *L. O. Koven & Bros., Inc. v. Local U. No. 5767, United Steel*, 381 F.2d 196, 203 (3d Cir. 1967), *citing Johnson v. England*, 356 F.2d 44, 51 (9th Cir. 1965), *cert. den. sub nom. Johnson v. Raphael Weill & Co., Inc.*, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966).

Any decision made in this dispute between Brookhaven and Avondale will inevitably affect the former's unsecured creditors because the size of the estate will be affected. This effect on other creditors is an additional factor weighing in favor of this court's retaining jurisdiction over the controversy.

Thus, this court, in its discretion, determines that it need not submit the within controversy to an arbitration tribunal, even though the contract between the parties provides for arbitration.

Turning back to the main issue, Brookhaven's basic claim is that Avondale's security interest in the greige goods in its possession does not survive Brookhaven's resale of the merchandise to Schott. Brookhaven's argument relies on the decision in *Tanbro Fabrics Corp. v. Deering-Milliken, Inc. ("Tanbro")*, 39 N.Y.2d 632, 385 N.Y.S.2d 260, 350 N.E.2d 590 (1976).

*Tanbro* states that a contractual lien in goods will not survive the resale of the goods by the buyer thereof to a sub-purchaser if the resale is in the ordinary course of the primary buyer's business and the secondary buyer has no knowledge that the sale to it may have been in violation of the ownership rights or security interest of the original seller of the goods.

Brookhaven claims that Avondale's security interest in the greige goods in its possession does not survive Brookhaven's resale of the merchandise to Schott. This court, however, finds that the facts in the case at bar are distinguishable from those in *Tanbro*.

In *Tanbro*, Deering-Milliken, Inc. ("Milliken"), the creditor, entered into a contract for the sale and delivery of greige goods to Mill Fabrics, Inc. ("Mill"), the debtor. Milliken retained a security interest in and possession of the goods. There, as opposed to the case at bar, Mill paid for the goods held in Milliken's possession. Thereafter, Tanbro Fabrics, Inc. ("Tanbro") sought to purchase from Milliken the type of fabric purchased by Mill, but was advised that although Milliken no longer offered such fabric, Tanbro might obtain that type from Mill. Subsequently, Tanbro asked Mill to sell it such goods, and paid Mill in full for all of the fabric. Sometime later, Tanbro requested Milliken to release the fabric to it, but Milliken refused on the basis that at that time, Mill was indebted to Milliken. The court held that Milliken could not refuse to deliver the goods to Tanbro; that Tanbro was an innocent third party who had fully paid for the goods in the ordinary course of business and that Milliken's security interest in the goods did not survive the resale to Tanbro.

The action in *Tanbro* was brought by the innocent third party, whereas in the case at bar, the third party subpurchaser Schott has not asserted any claim against the main parties. A more important distinction between Tanbro and the instant case concerns the fact that in *Tanbro*, Mill, as the original purchaser, had paid Milliken for the goods in the latter's possession. Tanbro, the innocent third party had, in turn, paid Mill for those same goods. In the case at bar, however, it is undisputed that Brookhaven, the original purchaser, has never paid Avondale for the goods which are in the latter's possession; and, furthermore, the innocent third party Schott has not paid Brookhaven for the balance of the goods held by Avondale which goods Brookhaven has directed be released to Schott.

While the *Tanbro* court held, pursuant to Uniform Commercial Code ("UCC") § 9–307(1), that Mill's sale to Tanbro was a sale in the ordinary course of business and Brookhaven makes a similar assertion in the instant case that its sale of the goods to Schott constituted a sale in the ordinary course of its business, this allegation is vigorously contested by Avondale who characterizes the sale as a "distress sale" which type of sale is specifically excepted by the *Tanbro* courts decision. That Brookhaven sold the fabric to Schott at $.10 a yard less than it was to pay Avondale for the same goods and at a time when Brookhaven had financial troubles is undisputed. However, whether such a sale was in the ordinary course of Brookhaven's business or was a distress sale as reflected by the loss of price is an issue of fact. This issue of fact, however, is not material relative to the granting of summary judgment because, regardless of the resolution of this issue, the other distinguishable Tanbro factors mandate a finding that a valid contractual lien survives.

This court recognizes the interesting issues raised by Brookhaven with respect to Avondale's assertion that it has a statutory lien in addition to its contractual lien on the greige goods in its possession. Relying on UCC Sections 2–702 and 2–703, Avondale asserts that it is entitled to withhold delivery of the goods in its possession based on its status as an unpaid seller and its discovery of the buyer's insolvency. Brookhaven, however, claims that such alleged statutory liens were either waived by Avondale's "release" of the goods to Schott, or by virtue of the avoidance powers of Section 545 of the Bankruptcy Code. It is unnecessary for this court to address these issues and the factual issues surrounding these legal claims, since it is decided that Avondale has a valid existing contractual security interest in the goods in its possession.

Finding that there are no genuine issues of material fact and that the legal issue must be resolved in favor of Avondale, the

court denies Brookhaven's cross-motion for summary judgment and grants Avondale's motion for summary judgment.

Settle an appropriate order.